Good morning, Your Honor. Michael McHugh on behalf of the appellant, plaintiff, Bellagio and Merage Resorts. I'd like to reserve, if I could, three minutes for rebuttal. Certainly. Your Honors, this is a suit by the Bellagio Hotel and Casino in Las Vegas, Nevada against a retail shoe store and related defendants in California who adopted logos identical to the Bellagio federally registered logos with the intent to cause confusion and tradeoff of Bellagio's goodwill and reputation. Bellagio brought suit in Nevada. The defendants moved to dismiss for lack of personal jurisdiction and the district court dismissed the case. So the issue on appeal is whether the district court erred in concluding that it did not have personal jurisdiction. Yeah, we certainly have. We know that much. So you submitted a 28-J letter for the Washington shoe case? Yes, Your Honor. So let me just cut to the chase. Is that still good law after Fiori? I believe it's still good law. Tell me how that, tell me how the mode of analysis we used in Washington shoe can be reconciled with what the Supreme Court just told us in Fiori. Your Honor, I believe that the general analytical framework of express direction is still applicable in intellectual property cases. Where you have defendants outside the forum state who have expressly directed their conduct towards the intellectual property owner within the forum state and the claim arises out of that purposeful direction, I believe that is still good law in establishing personal jurisdiction over the defendants. I don't even, I don't know if that's even responsive to my question. The mode of analysis the court told, I mean the court reversed our decision in Fiori and told us we were wrong because we had focused too much on basically the location of the plaintiff and the plaintiff's contacts with the forum and instead what we needed to do was to focus on the defendant's contacts with the forum, right? Correct. So I read our Washington shoe case as basically saying the defendant in a, there it was a copyright infringement action, could have zero contacts with the forum whatsoever. All they would need to know is that the plaintiff was located there and as long as they engaged in an intentional act of infringement, problem solved. And so I'm saying to me that seems completely irreconcilable with Fiori and so help me see how they can be reconciled. Your Honor, let me focus on if I could the defendant's conduct in this case. So the defendants traveled to Las Vegas, particularly defendant Shonan, stayed at the Bellagio Hotel and Casino and went to trade shows in Las Vegas. Got some business cards. Got business cards, went back to California and decided to change the name of his, one of his stores to Bellagio Shoes using the exact logo used by the Bellagio Hotel and Casino and informed his employees to encourage customers to believe that there's an affiliation or connection with the Bellagio Hotel and Casino in Las Vegas, basically intending to cause confusion. And also he wanted to use the Bellagio name to dupe suppliers into believing that there's an affiliation or connection so they'd be less likely to press them for prompt payment. In focusing on the defendant's conduct and before I forget or you run out of time, can I have you address the defendant, is it Shoshon, the one who's the webmaster? Yes. What in his conduct was directed to the forum in a meaningful way under Fiori such that there would be jurisdiction over him? Sure. I concede that we're very weak on Shoshon. Well, I don't see that you have it, so that's why I want you to point me to the record evidence that demonstrates that you do. Right. The only evidence we have regarding Shoshon is that he maintained the website that used a stylized B logo, which was registered by the Bellagio. Beyond that, we have no evidence of express targeting by Shoshon. He didn't profit from sales from the website. He basically set up the websites in California. And maintained them, yes. But we haven't conducted any discovery, so this is the only information we've been able to obtain. We happen to have a former employee who provided a lot of evidence that we would not have otherwise had and that a plaintiff would not otherwise have in any case where you're trying to establish specific jurisdiction. So I believe the facts of this case go way beyond Washington Shoe. Well, you mentioned a couple of other contacts that one or more of the defendants had with the forum, but am I wrong in thinking that if we go through all of the steps of the analysis so that we have to figure out, okay, given these contacts, does your cause of action arise out of those? I guess I thought that at the end of the day we were limited to looking at the website, right, because that's really the infringement activity. You're not going to be able to get anything from the banner, what do you call it, what do you call the thing about the store? Oh, the retail sign? Yeah. I mean, that was all here, I mean, here in California. So in terms of stuff that could be targeted at Nevada, it's really the website and soliciting sales, right? That is part of it, yes. So the defendants maintained interactive websites, shipped shoes into Nevada, and we provided evidence of the record of at least an attempted purchase of shoes where there was an order accepted, but later apparently canceled. They figured out who it was from, they said, no thanks, we don't want your business. And the debit authorization said Bellagio Shoes. But that was just one example filed, that was after the lawsuit was filed, but the declaration of a statement prior says that they routinely shipped shoes into Nevada. You don't have any evidence at this point as to the volume of sales, percentage of sales, nothing like that? We do not, Your Honor, because we were not able to conduct the actual discovery. Did you ask for discovery on those? We did, Your Honor. Issues? Okay. We asked for discovery, we asked for a hearing, all we received was the order denying jurisdiction, we filed a motion for clarification to try to figure out the court's basis for denying or granting the motion to dismiss, and that was denied. You could probably win this case in L.A. I don't know why you think it's so important to be in Nevada, frankly. Your Honor, it has broad implications for intellectual property owners generally, whether we have to go all over the country to sue everyone who wants to trade off the goodwill and reputation of our client's marks, and in the case of Bellagio, they're all over the country. It makes it much more expensive for intellectual property owners to have to do that, and then exposes them to jurisdiction all around the country in other kinds of cases, too. You want to make it more expensive for them to go to Nevada instead? Or less expensive for us. All right, you want it to save a little bit of time. Yes, thank you, Your Honor. May it please the court, my name is Robert Rosenthal, and I represent all of the defendants in this matter. Bellagio Shoes, Bertini Shoes, Itzhak Ben-Shoshon, and Shlomo Ronan. I think the court raised some interesting comments. Can you be sure you're speaking into the microphone? Thank you, I will, Your Honor. Hopefully you can hear me better now. Thank you. Bellagio Shoes alleges that defendants committed various intentional acts, but it's not clear that these acts were expressly aimed at the state of Nevada, or that the defendants knew that the harm caused was likely to be suffered in Nevada. There are no allegations concerning how defendants' various violations were targeted at the state of Nevada. I'm sorry to interrupt you, but you should, I think, jump straight to the Washington Shoe Case. It seems mighty on point. And it suggests that all you need to know, if you're going to engage in an intentional or willful act of infringement, you just need to know where the holder of the mark is. And clearly your clients did. But I think there are some major distinguishing factors in the Washington Shoe Case foremost is that the defendant in that case was placed on notice that there was a potential violation and it was placed on notice by the USPTO that there was a potential... Wait a minute, really? You don't think your clients knew that they were infringing the mark? Is that what you're saying? That's exactly what I'm saying, Your Honor. First of all, the stylized bee was used at least three years, was used by Bellagio Shoes or, at that time, Bertini Shoes, at least three years before the Bellagio Hotel was even built. And Bellagio, the name Bellagio was certainly a descriptive term. I mean, it's common knowledge that when Steve Wynn built the Bellagio Hotel, he did so after going to the town of Bellagio in Italy, as did my clients. That's a fair point, but am I wrong with this legal principle? I thought that in this context, personal jurisdiction, if the district court does not hold an evidentiary hearing, that basically we've got to credit the plaintiff's version of the facts, not yours. Because I know what you're saying, and you have evidence that you've presented to support what you've just said, but it definitely conflicted with the evidence they presented, right? For the former employees that know, they went there, they specifically got the business card, they came back, they told us we should all basically rip off their mark. I mean, if we credited that, we couldn't believe what you've just said, right? I hear exactly what you're saying, and I believe that is true, that there are conflicting facts. However, at the end of the day, I believe that Judge Pro from the district court weighed those facts, along with the test that is to be used for purposeful direction for a case of this nature, and found that, one, there was no harm to Bellagio Hotel, by virtue of Bellagio Shoes being in business. I mean, it's still unclear. There have been no facts adduced by the Bellagio Hotel as to how it's been harmed by a store, a shoe store called Bellagio Shoes being in operation. All it says, it's, we will suffer harm. That's what's on the record. And I don't think that that comports with the standard that is necessary. Furthermore, it's completely unclear how the mark has been diluted by Bellagio Shoes, if at all. Well, those may be questions for damages and merits. Really, the question is whether there was a purposeful direction targeting through Internet sales to Nevada such that it can be tried in that forum state. Now, you indicated earlier in your arguments that there were conflicting facts in this matter. So why wouldn't it be appropriate to send it back for the district court to conduct or grant discovery with regard to jurisdictional issues? I mean, normally, when jurisdictional facts are contested, the court grants discovery. Correct, Your Honor. And here, it seems to me that the jurisdictional facts are pretty hotly contested. But I think at the end of the day, given the totality of the circumstances, I don't think that Bellagio Hotel met its burden to establish jurisdiction. And Judge Breaux certainly weighed that in both all of the initial pleadings and in the motion for reconsideration clarification. With respect to discovery, it is Bellagio Hotel's burden to demonstrate actual and substantial prejudice. And I don't think that it has done so. How is Bellagio Hotel, which conducts business in California, prejudiced and harmed by litigating its case here in California, where that's the situs of defendant's activities, that's where the internet sales essentially emanate from, that's where all of the business is conducted? There are no facts, furthermore, that demonstrate the hotel has been harmed, actually harmed, by a shoe store being in operation in Santa Monica. That has never been alleged. Well, it's been alleged, but it has never been demonstrated that a harm has actually occurred by virtue of the shoe store being in operation. Well, what was, I mean, in Washington Shoe, I mean, there was some, I can't even remember where the store, the other store was, but it was a few pairs of boots or something. It wasn't anything crazy. Right, but it was a complete knockoff of the Billy Boots or the Rain Boots that was in question. I think it was Itsy Boots, I think of the order, they were called something like that, in Arkansas. We didn't say, Washington Shoe, show us how you've been harmed by this infringement of your copyright. We just said, this is a willful, it's a case of willful infringement, and the holder of the mark knew that you were there, so. It had been placed on notice, and then intentionally went out and said about violating that mark again, even after having been placed on notice. But, but. That has not occurred here. But if we, that's what I was saying, if we don't credit your version of the facts, and we have to credit their version, then don't you concede that your clients were on notice? It was part of the deliberate scheme they cooked up. I think that they can allege that, but there are certainly no facts, there's nothing on the record to indicate. They have a declaration from someone who said that's what happened. Now, I know you contest everything the man said, but there is evidence. It's not like they just made this up. Even if that's to be taken as true, they still haven't met the extension of that test, which is to show actual harm, and substantial and actual prejudice. That is what necessarily has to follow, and they've never alleged it. It's not on the record anywhere. And so by virtue of, of that missing element alone, their claim fails, at least for the jurisdictional analysis. And furthermore, pardon me, the lower court certainly gave the plaintiff an out here and said go ahead and refile in the Central District of California. We'll allow you to do that. Obviously, it's been alleged and it's on the record that the MGM conducts business in California regularly. It even has a property in California. There would certainly be no prejudice to the MGM by having to come to California to litigate. I mean, we're talking about a multi-billion dollar business here. It's, it's not a burden. The burden is clearly the defendants, and we've demonstrated, have been burdened and will be burdened if they are forced to travel to Nevada to litigate a case where, as my clients have alleged, they don't conduct business at all in Nevada. Never have. They don't own property. As the court ---- Internet, Internet sales. As alleged, and obviously ---- Well, that, that's my, that's why I ask about discovery. Because you're saying as alleged. Well, they've put in declarations, and I know you contest that. Yes. But without discovery, we'll have to, if we take what they say to be true on this current record, I've got the Internet. I think Judge Proh did weigh the record, and as noted in the order, did note that there was substantial briefing and substantial declarations submitted by both parties with respect to the conduct of, of Bellagio Shoes and its predecessors and the business it conducts. And it found that there was no jurisdiction. Here we have the one piece of evidence that's been submitted by the MGM is from a disgruntled former employee of, of the defendants who was terminated for theft. And he has alleged that there have been, that there were Internet sales. We provided multiple declarations from multiple witnesses who all demonstrated or shown that there were never any sales in Nevada. And the fact of the matter is, why, if there were really substantial sales in the state of Nevada by the shoe store, then why did plaintiff's counsel's paralegal go out and try to purchase a pair of shoes? If they really had evidence to show that shoes were indeed purchased over time, there would have been no need to do that. Instead, counsel got his paralegal to try to purchase a pair of shoes unsuccessfully. And so to date, the defendant's record and submitted to the court has been there were no, there were no sales in the state of Nevada. And they certainly have not interjected themselves into the state of Nevada as sufficient as per the new holding in Fiore. And I don't think this case is similar to Washington Shoe. It is distinguishable because of the intent and the fact that in that case, clearly there was a set of knockoff boots that were indeed sold. Multiple sales were in another state. I think it was Arkansas, actually. Thank you very much, Fiore. Thank you for your time. Thank you. I would just like to make a few quick points. Counsel continues to argue the merits of the case, and it's very clear under the Dole Foods v. Watts case 303F2-1104, 9th Circuit, 2002, that where there's a conflict in the party's version of the facts, the plaintiff's version must be assumed as true. And so the court must assume that the declaration of Jamie and Pryor is true in determining whether there's specific jurisdiction or not. Counsel also referred to Bellagio having to show prejudice of litigating in California. That's not a standard I'm familiar with. Our standard is we need to make a primary fascist showing of jurisdiction, which I believe we've done, and the burden shifts to them to establish why it would be essentially a violation of due process for them to have to litigate in Nevada, and they have not. Finally, with respect to the distinction they made between the Washington Shoe case, they were on notice. We did send a cease and desist letter. It's referred to. It's not in the record, but there's a reference to it in our opposition to their motion to dismiss, document 12, page 3. We did send a cease and desist letter. They were on notice. And even without a cease and desist letter in this case, when they adopt the identical logo as the Bellagio, they adopted it after visiting Las Vegas, and we have testimony from Jamie and Pryor, the reasons why they adopted it. They certainly were on notice of the Bellagio trademark rights. And the last point I want to address is harm. We're not also required to prove harm at the jurisdictional level, but when they adopt a mark that is identical to the Bellagio's mark and within the scope of their trademark rights, there's clearly an infringement, and we're entitled to take action to enforce that. Just out of curiosity, when did you send the cease and desist letter? I don't have a date, but I know it was right before filing suit. I believe that's why we sent the letter. They denied that there was any infringement because the whole Bellagio is a city argument, and then we filed suit. Thank you, Your Honor. Thank you very much. The matter will be submitted for decision and will be adjourned for the morning.
judges: Noonan, Nguyen, Watford